**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Kayla Jane,** | ) | **CASE NO. 1:16 CV 2195** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Jeffrey K. Patterson, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### Introduction

This matter is before the Court upon Second Motion of the CMHA Board for Judgment on the Pleadings (Doc. 39), Defendants Mayor Jackson and Council Kevin Kelley's Motion for Judgment on the Pleadings (Doc. 40), and Defendants Jeffrey K. Patterson, Cuyahoga County Metropolitan Housing Authority, Andres Gonzalez, Cuyahoga Metropolitan Housing Authority Police Department, and Kelly Brown's Partial Motion for Judgment on the Pleadings (Doc. 43). This case alleges violations of plaintiff's rights based upon her transgender status. For the following reasons, the motions are GRANTED.

1

**Facts**

Plaintiff Kayla Jane filed this First Amended Complaint against defendants Jeffrey K. Patterson (personally and as CEO of Cuyahoga Metropolitan Housing Authority (CMHA)), Mayor Frank Jackson (personally and as Mayor of the City of Cleveland), Cleveland City Council President Kevin Kelley (personally and as Council President), Mayor Gary Norton (personally and as Mayor of the City of East Cleveland), Ronnie A. Dunn, Ph.D. (personally and as Chairman of CMHA Board of Commissioners), Stephanie Pope (personally and as CMHA Commissioner), Robert Davis (personally and as CMHA Commissioner), Barry Withers (personally and as CMHA Commissioner), CMHA, Andres Gonzalez (personally and as CMHA Police Chief), CMHA Police Department, CMHA Police Department Supervisors, Kelly Brown (personally and as building manager of CMHA), Paige Fink, Pamela Reed, and numerous Jane and John Does. The First Amended Complaint essentially alleges the following.

Plaintiff is a transgender woman who resided as a tenant in a CMHA apartment complex located in Cleveland. Plaintiff had previously been homeless, but obtained CMHA housing in February 2015. She resided there until June 2016. Defendant Kelly Brown was the CMHA building manager of plaintiff's apartment complex. During the entire length of plaintiff's residence in the complex, Brown verbally harassed plaintiff on the basis of her transgender status. Defendants Fink and Reed, other CMHA residents, also verbally abused plaintiff. In December 2015, Brown held a hearing to evict plaintiff  Plaintiff was represented by a Legal Aid attorney and CMHA became aware of the abuse and discrimination against plaintiff. CMHA agreed there was no basis for eviction and promised to transfer the residents hostile to plaintiff but failed to do so. On June 20, 2016, defendant Fink pretended to befriend plaintiff

and took her to the beach. Upon their return to the apartment complex, plaintiff was attacked and beaten by Fink, Reed, and other residents who were waiting for plaintiff and had clearly planned the attack. Plaintiff was hospitalized for three days. A CMHA patrolman stated to plaintiff that the attack was a hate crime, but subsequent police reports did not characterize it as such and described plaintiff as the perpetrator and Reed and Fink as victims. While plaintiff was hospitalized, Brown issued a series of citations to plaintiff for "not tidying up her room." Brown put the citations under the locked door of plaintiff's apartment which caused plaintiff additional stress upon her return from the hospital. Fink and Reed continued to harass and menace plaintiff. In July 2016, a second eviction hearing was initiated by Brown. Plaintiff thereafter lived out of her car. Plaintiff was attacked in September and October 2016. The second attack was perpetrated by one of plaintiff's former CMHA assailants. Despite there being a witness, the City of Cleveland Prosecutor refused to file charges.

Plaintiff filed this First Amended Complaint asserting seven claims. Count One asserts a substantive due process claim under § 1983. Count Two asserts a Fair Housing Act (FHA) violation. Count Three asserts a § 1983 claim for publicizing highly personal, non-public information. Count Four asserts retaliation for the exercise of First Amendment Rights under § 1983. Count Five asserts a violation of Equal Protection under § 1983. Count Six asserts felonious assault in violation of the Ohio criminal statute and seeks damages under O.R.C. § 2307.60. Count Seven asserts obstruction of justice in violation of the Ohio criminal statute and seeks damages under O.R.C. § 2307.60. Each claim is asserted against all defendants.

This matter is now before the Court upon Second Motion of the CMHA Board for Judgment on the Pleadings; Defendants Mayor Jackson and Council Kevin Kelley's Motion for

Judgment on the Pleadings; and Defendants Jeffrey K. Patterson, Cuyahoga County Metropolitan Housing Authority, Andres Gonzalez, Cuyahoga Metropolitan Housing Authority Police Department, and Kelly Brown's Partial Motion for Judgment on the Pleadings.

**Standard of Review**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion."*Mellentine v. Ameriquest Mortg. Co.,* 2013 WL 560515 (6th Cir. February 14, 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir.2001)):

> The court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. The factual allegations must raise a right to relief above the speculative level. In other words, the Rule 12(b)(6) standard requires that a plaintiff provide enough facts to state a claim to relief that is plausible on its face.
>
> While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Bare allegations without a factual context do not create a plausible claim. A complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory. The bare assertion of legal conclusions is not enough to constitute a claim for relief.

(*Id.*) (internal citations and quotations omitted).

**Discussion**

**(1) Second Motion of the CMHA Board for Judgment on the Pleadings**

Plaintiff sued CMHA Commissioners Dunn, Pope, Davis, and Withers in their individual and official capacities on federal and state claims. These defendants assert that the Amended Complaint fails to state a claim against them. For the following reasons, this Court agrees.

Plaintiff does not dispute that § 1983 claims asserted against these defendants in their official capacities are essentially claims against CMHA, a named defendant. An official-capacity claim for damages "generally represents only another way of pleading an action against

4

an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quotations omitted). If the government entity "received notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (noting that a plaintiff may only recover on a damages judgment in an official-capacity suit against the government entity, not the official). Thus, if the entity has been named as a defendant, an official-capacity claim brought against an individual agent of the entity is "superfluous" and may be dismissed. *See Faith Baptist Church v. Waterford Tp.*, 522 F. Appx. 322, 327 (6th Cir. 2013) (dismissing official-capacity claims against prosecuting attorney because township was named as a defendant); *see also Foster v. Michigan*, 573 F. App'x 377, 389–90 (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant."). As such, the official capacity § 1983 claims against these defendants are duplicative of the claims asserted against CMHA and fail to state a claim against the individual Commissioners.

Nor does the Amended Complaint state a § 1983 claim against these defendants in their individual capacities. It is well-established that

> A plaintiff bringing an individual capacity claim under § 1983 seeks to impose individual liability upon a government officer for actions taken under color of state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). To sufficiently plead a § 1983 claim against a Defendant in his/her individual capacity, a plaintiff must allege Defendant's personal involvement in the alleged constitutional violation. *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (explaining liability must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others); *see also Murphy v. Grenier*, 406 Fed.Appx. 972, 974 (6th Cir. 2011).

*Lovette v. Bowen,* 2016 WL 5661837 (W.D.Ky. Sept. 29, 2016) (internal quotation marks omitted). "To sufficiently plead a § 1983 claim, a plaintiff must allege personal involvement

because § 1983 liability cannot be imposed under a theory of *respondeat superior*." *Gresham v. Mohr,* 2017 WL 690737 (S.D.Ohio Feb. 3, 2017) (citations omitted). "[A]n individual is only liable for his or her own misconduct." *Burley v. Gagacki,* 834 F.3d 606 (6th Cir. 2016).

As the Amended Complaint fails to set forth facts showing the personal involvement of the CMHA Commissioners, § 1983 claims against them in their individual capacities fail.

Count Two alleges a Fair Housing Act violation claim and asserts that all defendants discriminated against plaintiff based on her transgender status and the Commissioners, with constructive knowledge of the other defendants' misconduct, enabled and encouraged it. Elsewhere in the Amended Complaint, plaintiff references that under the Fair Housing Act, a principal may not delegate to an agent its duty to not discriminate and defendants may be liable under the doctrine of *respondeat superior.* Indeed, in assessing liability under the Fair Housing Act, "The discriminatory conduct of an apartment manager or rental agent, is as a general rule, attributable to the owner and property manager of the apartment complex, both under the doctrine of respondeat superior and because the duty to obey the law is non-delegable." *Marr v. Rife*, 503 F.2d 735 (6th Cir. 1974) (citations omitted). The Supreme Court has recognized, however, that although the Fair Housing Act provides for vicarious liability, "[a]bsent special circumstances, it is the corporation, not its owner or officer, who is the principal or employer subject to vicarious liability for the torts of its employees or agents." *Meyer v. Holley*, 537 U.S. 280 (2003). CMHA is the "body corporate and politic." Ohio Revised Code § 3735.31. The Board members are officers of CMHA. As such, they are not the principal. As defendants point out, the Board of Commissioners is not the principal of any CMHA employee, but Board members are merely agents, themselves, of CMHA which is the principal. Thus, the Fair

6

Housing Act's "nondelegable duty" not to discriminate imposed on a principal does not extend to an officer. *Marr, supra.* For these reasons, Count Two fails to state a claim against these defendants.

Nor do plaintiff's state law counts state a claim against the Commissioners because allegations for civil recovery based on a criminal act "are not viable in the absence of a criminal conviction." *A.A. v. Ostego Local Schools Bd. Of Education,* 2016 WL 7387261 (N.D.Ohio December 21, 2016) (citing Ohio Rev. Code § 2307.60 and *Ortiz v. Kazmier*, 2015 WL 1400549 (N.D. Ohio 2015), aff'd 811 F.3d 848 (6th Cir. 2016)). There is no allegation that anyone was convicted of felonious assault or obstruction of justice. Thus, Counts Six and Seven fail to state a claim against any defendant.

Additionally, defendants argue that, as agents of CMHA, they are entitled to the same political subdivision immunity set forth in Ohio Revised Code § 2744.02 that CMHA is entitled to. Again, the Court agrees. Determining whether a political subdivision is immune from liability involves a three-tiered analysis. *Lambert v. Clancy*, 125 Ohio St. 3d 231, 233 (2010). First, with certain exceptions, § 2744.02 provides a general grant of immunity to political subdivisions for "damages in a civil action for injury [or] death...allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A). The second step of the analysis focuses on whether any of the five exceptions to political subdivision immunity listed in § 2744.02(B) apply. *Lambert*, 125 Ohio St. 3d at 233. The exceptions to immunity are for:

(1) an employee's negligent operation of a motor vehicle;
(2) an employee's negligent performance of acts with respect to proprietary functions;
(3) the negligent failure to keep public roads in repair and other negligent failure

7

> to remove obstructions from public roads;
> (4) an employee's negligence that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, "but not including jails, places of juvenile detention, workhouses, or any other detention facility"; and
> (5) a catchall provision for liability expressly imposed by other statutes.

Ohio Rev. Code § 2744.02(B). If one of the exceptions to immunity applies, then the analysis proceeds to the third step. At this step, the court determines whether any of the defenses set out in Ohio Revised Code § 2744.03 apply to shield the political subdivision from liability. *Lambert*, 125 Ohio St. 3d at 233. If none of the exceptions to immunity in § 2744.02(B) applies, then the court does not address defenses. *Rankin v. Cuyahoga Cty Dept. of Children & Family Servs.*, 118 Ohio St. 3d 392, 397 (2008) ("We need not go further in our immunity analysis, as R.C. 2744.02(A) prohibits the appellees' claim against the department, and there is no exception in R.C. 2744.02(B) that permits the claim to be resurrected.").

In *Lambert*, the Ohio Supreme Court considered whether the immunity analysis for political subdivisions applies to office holders who are sued in their official capacity or whether the employee-immunity provisions of Ohio Rev. Code § 2744.03 apply instead. *Id.* at 236. Because suing an officeholder in his or her official capacity is "the equivalent of suing the political subdivision," the court held that the officeholder is entitled to the grant of immunity for political subdivisions. *Id.* Courts have applied *Lambert* to a variety of officials and employees. *See, e.g., Snyder v. United States*, 990 F. Supp. 2d 818, 846 (S.D. Ohio 2014) (police officer); *Harris v. Columbus*, 2016 Ohio 1036, 2016 WL 1051129, at \*7 (Ohio Ct. App. March 15, 2016) (sheriff); *Newton v. City of Cleveland Law Dept.*, 2015 Ohio 1460, 2015 WL 1737935, at \*4 (Ohio Ct. App. April 16, 2015) (police detectives, county medical examiner, county office

8

administrator).

No exception to immunity applies. The Commissioners are immune from the state law claims in their official capacity. Additionally, as before, the claims are duplicative to those against CMHA.

Dismissal is also warranted as to the state law claims in the Commissioners' personal capacities. For the same reasons discussed above regarding personal liability for § 1983 claims, there are no plausible facts showing the Commissioners were personally involved with the alleged actions taken against plaintiff. Thus, no exception for employee immunity can apply. O.R.C. § 2744.03(A)(6).

For these reasons, Second Motion of the CMHA Board for Judgment on the Pleadings is granted.

**(2) Defendants Mayor Jackson and Councilman Kevin Kelley's Motion for Judgment on the Pleadings**

Plaintiff sued City of Cleveland Mayor Jackson and Cleveland City Council President Kelley in their individual and official capacities on federal and state claims. These defendants assert that the Amended Complaint fails to state a claim against them. For the following reasons, this Court agrees.

As with the defendants above, the Amended Complaint does not state a § 1983 claim against Mayor Jackson and Council President Kelley in their personal capacities. There are no facts showing these defendants' personal involvement with the alleged wrongful actions taken against plaintiff. Moreover, the Amended Complaint seems to base the liability of Jackson and Kelley on their statutory duty to appoint members of the CMHA Board. Plaintiff then alleges that as appointing authority, Jackson and Kelley must supervise their appointees. But, the Ohio

9

statute does not give the mayor and council president authority over the Board members' actions. *See* O.R.C. §§ 3735.27, 3735.31. In particular, there is no supervisory power. Even if they did have supervisory authority over the Board (or the building manager), supervisors are not liable under § 1983 for the unconstitutional conduct of subordinates unless the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in" the subordinate's unconstitutional conduct. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). There is no plausible allegation that Mayor Jackson or Council President Kelley authorized, approved, or acquiesced in the alleged abuse by Brown.

As to the official capacity suit against them, as discussed above, this equates to a suit against the City.[1] However, it is well-established that a municipality may only be held liable under § 1983 when an official policy or custom causes an employee to violate another's constitutional rights. *See Smith v. Patterson*, 430 Fed.Appx. 438 (6th Cir. 2011) (citing *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978)). The Amended Complaint alleges that "there exists a Cleveland City custom or policy of deliberate indifference to criminal conduct by their agents." (Am.Compl. ¶ 54) Plaintiff alleges that the City's "policy and custom resulted in a license to attack [plaintiff], resulting in the two additional attacks against" plaintiff after she moved out of CMHA housing. (*Id.* ¶ 126) In her brief, plaintiff asserts that she has alleged "the establishment of a widespread custom amounting to a city policy of 'looking the other way' when the rights of transgender individuals and others are violated by public employees." (Doc. 45 at 3) And she

---

[1] Plaintiff did not name the City as a defendant. But, the claims against the mayor and council president in their official capacity "are an alternative way of pleading an action against the entity for which the officers are employed." *Burnside v. Walters,* 2014 WL 4809937 (W.D.Tenn. Sept. 26, 2014) (citations omitted).

has alleged that Jackson and Kelley "through a longstanding refusal to act to correct discrimination, such as, the abuse of transgender individuals, have created a shield of immunity which permitted and encouraged misconduct by CMHA employees." (*Id.* at 4)

"For Plaintiff to present a viable *Monell* claim, he must identify a specific policy or custom that was the moving force behind Plaintiff's alleged constitutional violation." *Glowka v. Bemis,* 2015 WL 8647702 (S.D.Ohio February 14, 2015) (citing *Sexton v. Kenton County Det. Ctr.*, 702 F.Supp.2d 784, 790 (E.D. Ky. 2010) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). An allegation, stated in a conclusory manner, that a governmental entity had a policy which caused an injury is insufficient where a specific policy or custom is not identified. *Weaver v. Henderson County,* 2017 WL 90386 (W.D.Tenn. January 10, 2017). Plaintiff does not specifically set forth a *Monell* allegation against the City. A conclusory allegation that the City had a policy of deliberate indifference to the criminal conduct by its agents is insufficient to state a *Monell* claim. Furthermore, the alleged perpetrators are CMHA agents and residents, not City of Cleveland employees.

Therefore, the official capacity § 1983 claims must be dismissed.

As to the Fair Housing Act claim alleged against these defendants, the non-delegable duty not to discriminate applies only to CMHA, as discussed above. Thus, Count Two fails to state a claim.

Having found no personal involvement of these defendants with the alleged actions taken against plaintiff, dismissal is also warranted on the state law claims.[2]

---

[2] To the extent that any of plaintiff's federal or state claims are based on the allegation that the City of Cleveland Prosecutor failed to file charges in connection with the October 4, 2016 attack on plaintiff, such an allegation fails to

For these reasons, Defendants Mayor Jackson and Councilman Kevin Kelley's Motion for Judgment on the Pleadings is granted.

### (3) Defendants Jeffrey K. Patterson, Cuyahoga County Metropolitan Housing Authority, Andres Gonzalez, Cuyahoga Metropolitan Housing Authority Police Department, and Kelly Brown's Partial Motion for Judgment on the Pleadings

Defendants Jeffrey K. Patterson, Cuyahoga County Metropolitan Housing Authority, Andres Gonzalez, Cuyahoga Metropolitan Housing Authority Police Department, and Kelly Brown[3] move for judgment on the pleadings as to all claims except Count Two (FHA claim) against CMHA and Counts One, Two, Three, Four, and Five against Brown personally. For the following reasons, this Court agrees with defendants.

Initially, plaintiff agrees that the CMHA Police Department is *non sui juris* and, therefore, should be dismissed because it is not capable of suing or being sued.

CMHA seeks dismissal of Counts One, Three, Four, and Five, the § 1983 claims, because the Amended Complaint fails to allege sufficient facts to state a valid *Monell* claim. It is well-established that CMHA, a government entity, cannot be held vicariously liable under 42 U.S.C. § 1983 based upon a respondeat superior theory of liability. *Tidaback v. City of Georgetown,* 2017 WL 1217165 (E.D.Ky. March 31, 2017)) (citing *Monell* and *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994)). "Plaintiff must demonstrate a direct causal

---

state a claim. *White v. City of Toledo,* 217 F.Supp.2d 838 (N.D.Ohio 2002) (internal citations and quotations omitted) ("In any event, the law is also clear that there is no constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.)

[3] The motion also applies to improperly named "CMHA Police Department Supervisors" and Jane and John Doe CMHA Officials.

connection between a policy or a custom of the Government and the Plaintiffs' alleged injuries." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *Johnson v. Hardin Cnty., Kentucky*, 908 F.2d 1280, 1285 (6th Cir.1990)). Thus, to state a claim against a governmental entity, "a plaintiff must adequately plead (1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia County, Ohio*, 753 F.3d 639 (6th Cir. 2014)(citing *Lambert v. Hartman*, 517 F.3d 433 (6th Cir.2008)). Furthermore, as stated above, plaintiff cannot generally reference a "policy and custom" or state such in a conclusory manner. Rather, plaintiff must identify a particular custom or practice and tie it to a particular defendant. *See also Sheppard v. Sheldon*, 2011 WL 3608223 (N.D. Ohio Aug.15, 2011).

The Amended Complaint does not identify any particular policy or custom adopted by CMHA that was the moving force behind the alleged violations. In fact, plaintiff vaguely references that the City had a custom and policy of deliberate indifference, but does not allege as much against CMHA. In her brief, plaintiff states that there exists an issue of fact as to "whether or not Defendants had a custom or policy of condoning a 'code of silence,' which sought to inhibit the reporting of malfeasance, as Plaintiff has alleged that such custom resulted in harassment by personnel of CMHA and felonious assault and other misconduct." (Doc. 50 at 6) Even if she had alleged this, such a vague reference does not amount to a custom or policy. Furthermore, plaintiff's use of the word "Defendants" shows that she is not attaching a specific policy to CMHA- the only defendant who would be responsible for a policy. In her brief, plaintiff additionally points to paragraph 40 of her Amended Complaint wherein she alleges,

> At the very least, Defendants were Policy-making officials and supervisors and in the event that they actually wished to prevent discrimination against transgender individuals,

13

> they have obviously adopted policies or customs which are grossly inadequate for dealing with discrimination against transgender individuals.

Again, there is no clear policy alleged. Moreover, plaintiff fails to differentiate between various named defendants whereas it is only the governmental entity that may be liable for the policy. *Garner v. City of Memphis*, 576 Fed. Appx. 460 (6th Cir. 2014).

While a municipality may "ratify its employees' acts—thereby subjecting itself to § 1983 liability—by failing meaningfully to investigate those acts," *Dresher v. Lucas County,* 2016 WL 5338042 (N.D. Ohio September 23, 2016) (quoting *Otero v. Wood*, 316 F. Supp. 2d 612 (S.D. Ohio 2004) and *Wright v. City of Canton*, 138 F. Supp. 2d 955 (N.D. Ohio 2001)), plaintiff must still allege a governmental policy. *Askew v. City of Memphis,* 2016 WL 3748609 (W.D.Tenn. July8, 2016) (citations omitted) ( "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Thus, to be liable under a ratification theory, the municipality's failure to investigate must be indicative of an official policy.")

Because she fails to identify an unconstitutional policy or custom and tie it to CMHA, Counts One, Three, Four, and Five alleged against CMHA under 42 U.S.C. § 1983 are dismissed. Likewise, the official capacity claims against defendants Gonzalez, Patterson, and Brown fail to state a claim.

With regard to the § 1983 personal capacity claims against CMHA Police Chief Gonzalez and CMHA CEO Patterson, the Court agrees that the Amended Complaint fails to allege any facts connecting them personally to the alleged unlawful conduct. In her brief, plaintiff confuses individual capacity with governmental liability. She asserts, "[T]hese defendants in their

14

individual capacities established policies causing Kelly Brown to be immune from accountability for her misconduct." (Doc. 50 at 3) And, Patterson, Brown, and Gonzalez "in their individual capacities ... set and/or executed the above referenced offending policy which caused the misconduct by Brown and which led to the attack upon Plaintiff." (*Id.* at 9) As stated above, to hold these defendants personally liable, plaintiff must allege their personal involvement in the alleged constitutional violation. Plaintiff does not do so.

Concerning defendants Gonzalez's and Patterson's personal liability under the FHA, these claims are dismissed for the reasons discussed above.

Finally, the state law claims are dismissed for the same reasons discussed above as to the other defendants.

For these reasons, Defendants Jeffrey K. Patterson, Cuyahoga County Metropolitan Housing Authority, Andres Gonzalez, Cuyahoga Metropolitan Housing Authority Police Department, and Kelly Brown's Partial Motion for Judgment on the Pleadings is granted.

**Conclusion**

For the foregoing reasons, Second Motion of the CMHA Board for Judgment on the Pleadings; Defendants Mayor Jackson and Council Kevin Kelley's Motion for Judgment on the Pleadings; and Defendants Jeffrey K. Patterson, Cuyahoga County Metropolitan Housing Authority, Andres Gonzalez, Cuyahoga Metropolitan Housing Authority Police Department, and Kelly Brown's Partial Motion for Judgment on the Pleadings are granted. The following claims remain: Count Two (FHA) against CMHA and Counts One, Two, Three, Four, and Five against defendant Brown personally.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 4/12/17